UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                                                 Plaintiff

v.                                                                     Criminal Action No. 3:25-CR-00030-RGJ

THOMAS CZARTORSKI, ET AL.                                                              Defendants

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

This matter is before the Court on the motions to sever filed by Defendants James Cameron Wright ("Wright") [DE 55] and Defendant Jarrod Lewis ("Lewis") [DE 59]. The United States of America ("United States") responded [DE 58; DE 64] and Lewis replied [DE 69]. These matters are ripe. For the reasons below, the Court **ORDERS** a hearing on the matters discussed herein.

**I.      BACKGROUND**

Defendants Wright, Lewis, and Thomas Czartorski ("Czartorski" and, collectively with Wright and Lewis, "Defendants") were Kentucky State Police ("KSP") Troopers at all relevant times. [*See* DE 1 (the "Indictment")]. This case relates to four separate use-of-force incidents and an alleged cover-up of one of those incidents, each involving one or more of the Defendants. [*Id.*]. On March 4, 2025, a grand jury returned an indictment charging five counts of "Deprivation of Rights Under Color of Law" in violation of 18 U.S.C. § 242 (Counts 1–5) and one count of "Perjury" in violation of 18 U.S.C. § 1623 (Count 6). [*Id.*]. The acts giving rise to the charges in the indictment are summarized below.

March 2020 Use-of-Force Incident. "On or about March 5, 2020," Wright, Lewis, and Czartorski arrested Alleged Victim 1. [*Id.* at 1–2]. Counts 1, 2, and 3 of the Indictment charge each Defendant with "willfully depriv[ing] [Alleged] Victim 1 of the right . . . to be free from an unreasonable seizure, which includes the right to be free from the use of unreasonable force by a

1

law enforcement officer." [*Id.*]. Specifically, Defendants allegedly "stomped and[/or] kicked" Alleged Victim 1. [*Id.*].

April 2020 Use-of-Force Incident. Czartorski arrested Alleged Victim 2 "[o]n or about April 3, 2020." [*Id.* at 3]. Count 4 of the Indictment alleges that Czartorski "willfully deprived [Alleged] Victim 2 of the right . . . to be free from an unreasonable seizure, which includes the right to be free from the use of unreasonable force by a law enforcement officer" by "str[iking] [Alleged] Victim 2 about the legs and torso with a flashlight, without legal justification." [*Id.*].

January 2021 Alleged Perjury. Count 6 of the Indictment alleges that "[o]n or about January 22, 2021," Wright "knowingly made false material declarations . . . while being deposed, under oath, in connection with a [civil rights case]" arising from Wright's use of force while arresting Alleged Victim 4 on "April 9, 2020." [*Id.* at 4]. Although Wright testified that he did not strike Alleged Victim 4, the Indictment alleges that Wright "knew and believed" that he "did in fact strike and use force on [Alleged] Victim 4 during his arrest." [*Id.* at 5].

March 2024 Use-of-Force Incident. Finally, "[o]n or about March 12, 2024," Wright arrested Alleged Victim 3 and, similar to the other charges under 18 U.S.C. § 242, is alleged in Count 5 to have employed unreasonable force by "tas[ing] [Alleged] Victim 3 without legal justification." [*Id.* at 3–4].

As relevant here, the sole charge against Lewis (Count 2) arises from the March 2020 incident, for which Wright and Czartorski were also charged (Counts 1 and 3). And from the face of the Indictment, it appears that the remaining charges against Wright (Counts 5 and 6) and Czartorski (Count 4) involve only one Defendant and separate Alleged Victims. Nevertheless, Lewis' Motion indicates that "[t]he April 9, 2020 incident also involved Mr. Czartorski." [DE 59 at 266]. As a result, it is unclear from the statements in the Indictment whether the allegations

2

pertaining to events "on or about" April 3, 2020 and April 9, 2020, refer to the same or separate incidents. [*See* DE 1 at 3, 5].

Wright and Lewis now move to sever, although on separate grounds. Wright objects to the joinder of multiple counts against him in the same trial and requests that the Court "sever Counts 3, 5 and 6 of the Indictment and order that each Count against the Defendant be tried separately by the Government." [DE 55 at 235]. Lewis objects to the joinder of his codefendants and asks the Court to "sever this case among the three Defendants, so that each defendant may be tried separately," [DE 59 at 264], or, in the alternative, "order a separate trial on the single count in which [he] is charged." [DE 69 at 304].

## II.   STANDARD

Joinder of offenses and defendants are subject to Rules 8 and 14 of the Federal Rules of Criminal Procedure. Rule 8 provides the requirements for joining offenses and defendants in the same indictment:

> **(a) Joinder of Offenses.** The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged--whether felonies or misdemeanors or both--are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.
>
> **(b) Joinder of Defendants.** The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. P. 8. Rule 14 provides that even if joinder is proper under Rule 8, the Court may choose to sever charges or defendants under Rule 14 ("Relief from Prejudicial Joinder") if a joint trial would prejudice one or more defendants:

> **(a) Relief.** If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(a).

In *United States v. Hatcher*, 680 F.2d 438 (6th Cir. 1982), the Sixth Circuit articulated the standard for joinder under Rule 8(b) as follows:

> The joinder of multiple defendants is proper under Rule 8(b) only if each of the counts of the indictment arises out of the same act or transaction or series of acts or transactions, even if all counts of the indictment include a common defendant.

*Id.* at 441 (citation modified). "[A] group of acts or transactions constitutes a 'series' if they are logically interrelated." *United States v. Johnson*, 763 F.2d 773, 775–77 (6th Cir. 1985) (explaining Rule 8(b) requires a "a sufficient nexus exists between the defendants and the single or multiple acts or transactions charged as offenses").

### III.   DISCUSSION

#### A. Motions to Sever

When an indictment charges multiple defendants, joinder may be challenged under either Rule 8(b) or Rule 14. "Although the remedy for misjoinder under Rule 8[] and prejudicial joinder under Rule 14 is the same—severance and separate trials—the two rules are analytically and procedurally distinct." *United States v. Lloyd*, 10 F.3d 1197, 1214 (6th Cir. 1993). Rule 14 is the prejudicial joinder rule. "Rule 14 comes into play only if joinder was initially proper under Rule 8 but a joint trial would prejudice one or more defendants." *Lloyd*, 10 F.3d at 1214. Thus, the Court finds it appropriate to first consider whether joinder of Lewis was proper under Rule 8(b) before reaching Wright's argument that severance is warranted under Rule 14.

4

According to Lewis, "[t]he operative question in this case . . . is whether 'each of the counts of the indictment arises out of the same act or transaction or series of acts or transactions." [DE 59 at 268 (citing *Hatcher* 680 F.2d at 441)]. Lewis concludes "[t]hey clearly do not." [*Id.*]. In response, the United States asserts that the "controlling test for whether acts or transactions occurring at different times and against different victims form a joinable 'series' of offenses is whether the distinct acts are 'logically interrelated.'" [DE 64 at 286 (quoting *United States v. Cousins*, 841 F. App'x 885, 893 (6th Cir. 2021))]. And while the United States concedes that the Indictment "does not charge a conspiracy or allege a common scheme or plan, it does allege a series of logically-related criminal acts by Defendant Wright, and that Defendant Lewis participated in one of those crimes." [*Id.*]

Based on the parties' briefings, however, the Court believes that hearing is necessary on certain issues before disposing of Lewis' Motion.

First, there are no allegations on the face of the Indictment directly connecting Count 4 to Wright. Only Czartorski is charged in connection to the April 3, 2020 incident involving Alleged Victim 2, and there is no mention of Wright in the charged facts. While it is true that Rule 8 is a "pleading rule" in which a court only examines "the allegations on the face of the indictment," *see United States v. Cousins*, 841 F. App'x at 893, it is also true that "Rule 8(b) should be construed to favor joinder in order to promote judicial economy." *Johnson*, 763 F.2d at 776. Here, the Indictment alleges that Wright was involved in the arrest of Alleged "Victim 4" on "April 9, 2020," during an incident which apparently involved Czartorski. [*Compare* DE 1 at 4, *with* DE 59 at 266 (explaining that "[t]he April 9, 2020 incident also involved Mr. Czartorski" but that "[o]nly Mr. Wright is charged . . . in connection with Incident #4")]. The Court cannot determine whether the allegations pertaining to events "on or about" April 3, 2020 and April 9, 2020, refer to the same or

separate incidents. [*See* DE 1 at 3, 5]. If these allegations refer to the same incident, a superseding indictment could be required to satisfy Rule 8(b). However, the parties' briefs do not squarely address this issue.

Second, although Lewis' Motion asks the Court to sever each Defendant, the United States suggests that the Court "can afford complete and appropriate relief by simply ordering a separate trial of the single count against Defendant Lewis." [DE 64 to 291]. And in his reply, Lewis "agrees that the other two co-defendants have not requested severance under Rule 8(b) and therefore agrees with that approach." [DE 69 at 298–99]. When determining "whether joinder would serve the goals of trial economy and convenience," the Sixth Circuit has stated that "the primary purpose of this kind of joinder is to insure that a given transaction need only be proved once." *United States v. Frost*, 125 F.3d 346, 390 (6th Cir. 1997) (quoting *United States v. Moreno*, 933 F.2d 362, 369 (6th Cir. 1991)). The Court notes that severing only Count 2 for separate trial appears to require cumulative proof of the March 2020 incident.

Accordingly, in the interest of judicial economy, the Court **ORDERS** a hearing on (1) whether, as alleged in the indictment, each count "arises out of the same act or transaction or series of acts or transactions," *Hatcher*, 680 F.2d at 438; and (2) the most appropriate way to sever the counts, in the event the Court determines Lewis was improperly joined.

## B. Unethical Citation Practices

Wright's Motion [DE 55] appears to contain erroneous citations to fictitious opinions.[1] Namely, Wright purports to cite the following "[f]ederal courts in Kentucky" in support of his argument: (1) "*United States v. Hang Le-Thy Tran*, No. 3:07-CR-53, 2008 WL 2699394 (E.D. Ky.

---

[1] [*See also* DE 59 at 270 (Lewis noting that "Mr. Wright appears to cite a non-existent [*Abbott*] decision," that "the Westlaw citation provided did not yield any results on Westlaw" and "[t]he case quotation provided does not appear in any cases in the Lexis database, and the date of the cited decision—June 27, 2023—predates the *Abbott* case").]

6

July 3, 2008)"; (2) "*United States v. Cope*, 312 F. Supp. 2d 791 (E.D. Ky. 2004)"; and (3) "*United States v. Abbott*, 2023 WL 4106534 (E.D.) Ky. June 27, (2023)." [DE 55 at 237]. Wright's brief also contains quotes from the foregoing cases but does not include pin cites referencing where these quotes were located—an unsurprising omission, given that no such cases exist. Even more concerning, the Motion cites *real* Sixth Circuit cases but misrepresents the holdings. [*See id.* (discussing "*United States v. Chavis*, 296 F.3d 450, 460 (6th Cir. 2002)" and "*United States v. Tran*, 433 F.3d 472, 478 (6th Cir. 2006)")].

The Court presumes that these errors were the result of using artificial intelligence ("AI"). At this point, it "is no secret that generative AI programs are known to 'hallucinate' nonexistent cases, and with the advent of AI, courts have seen a rash of cases in which both counsel and pro se litigants have cited such fake, hallucinated cases in their briefs." *Sanders v. United States*, 176 Fed. Cl. 163, 169 (2025). "Without question, it is improper and unacceptable for litigants . . . to submit 'non-existent judicial opinions with fake quotes and citations.'" *Anonymous v. N.Y.C. Dep't of Educ.*, No. 1:24-cv-04232, 2024 WL 3460049, at *7 (S.D.N.Y. July 18, 2024) (citation modified). AI citations to real cases can be even more problematic. *See Seither & Cherry Quad Cities, Inc. v. Oakland Automation*, LLC, No. 23-11310, 2025 WL 2105286, at *1 (E.D. Mich. July 28, 2025) ("When a case cite is 'real,' an attorney, or for that matter a judge, might see a case they recognize and assume the quote or holding has been accurately represented, where a case that an attorney does not recognize might, at least at first blush, trigger more exacting scrutiny.") As this Court has previously recognized, "many harms flow from such deception—including wasting the opposing party's time and money, the Court's time and resources, and reputational harms to the legal system (to name a few)." *Buckner v. Hilton Glob.*, No. 3:24-CV-375-RGJ, 2025 WL 890175, at *14 (W.D. Ky. Mar. 21, 2025) (quoting

*Morgan v. Cmty. Against Violence*, No. 23-cv-353-WPJ/JMR, 2023 WL 6976510, at *8 (D.N.M. Oct. 23, 2023)). "Sanctions may be imposed for submitting false and nonexistent legal authority to the Court." *Anonymous*, 2024 WL 3460049, at *7.

The Court **ORDERS** a hearing for Wright's counsel to show cause why they should not be sanctioned pursuant to Rule 11(b)(2) & (c) of the Federal Rules of Civil Procedure, and the inherent power of the court, for citing fictitious decisions and misrepresenting the holdings of various cases in reliance on AI-generated content. *See, e.g., Seither*, 2025 WL 2105286, at *1 (issuing similar show cause order).

## IV.    CONCLUSION

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that this matter shall come for hearing to address Lewis' Motion to Sever [DE 59] and for Wright's counsel to show cause on **November 18, 2025 at 1:00 p.m.**[2]

Rebecca Grady Jennings, District Judge
United States District Court

November 10, 2025

cc: counsel of record

---

[2] This case was previously set for hearing on the United States' *Garrity* motion [DE 37], scheduled for November 18, 2025 at 1:30 p.m. [DE 72]. Because counsel for the United States are screened off with respect to the *Garrity* determination, the hearing ordered herein shall be separate but will be scheduled to take place immediately before the *Garrity* hearing.

8