UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                           Plaintiff

v.                                               Criminal Action No. 3:25-CR-00030-RGJ

THOMAS CZARTORSKI, ET AL.                                         Defendants

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

This matter is before the Court on the written motions to sever by Defendants James Cameron Wright ("Wright") [DE 55] and Defendant Jarrod Lewis ("Lewis") [DE 59], as well as the oral motion to sever by Defendant Thomas Czartorski ("Czartorski"). Plaintiff United States of America ("United States") responded [DE 58; DE 64] and Lewis replied [DE 69]. These matters are ripe. For the reasons below, Wright's Motion to Sever [DE 55] is **DENIED**, Lewis' Motion to Sever [DE 59] is **GRANTED**, and Czartorski's motion is **GRANTED in part and DENIED in part**.

I.     BACKGROUND

Defendants Wright, Lewis, and Czartorski were Kentucky State Police ("KSP") Troopers at all relevant times. [*See* DE 1 (the "Indictment")]. This case relates to four separate use-of-force incidents and an alleged cover-up of one of those incidents, each involving one or more of the Defendants. [*Id.*]. The Court reincorporates and adopts the facts and definitions set forth in in its prior Order. [DE 73, Section I ("Background")]. Pursuant to that Order, this matter came for hearing on November 18, 2025, where the parties were given the opportunity to further address Lewis' joinder under Rule 8(b) and the appropriate remedy in the event Court finds Lewis was improperly joined. [DE 78; *see also* DE 73 at 315]. At that time, Czartorski adopted the arguments

1

made by Lewis moved by oral motion and requested the Court sever Count 5 of the Indictment pursuant to Fed. R. Crim. P. 8(b). [DE 79 at 352–53].

## II.    STANDARD

Joinder of offenses and defendants are subject to Rules 8 and 14 of the Federal Rules of Criminal Procedure. Rule 8 provides the requirements for joining offenses and defendants in the same indictment:

> **(a) Joinder of Offenses.** The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged--whether felonies or misdemeanors or both--are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.
>
> **(b) Joinder of Defendants.** The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. P. 8. Rule 14 provides that even if joinder is proper under Rule 8, the Court may choose to sever charges or defendants under Rule 14 ("Relief from Prejudicial Joinder") if a joint trial would prejudice one or more defendants:

> **(a) Relief.** If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(a).

When an indictment charges multiple defendants, joinder may be challenged under either Rule 8(b) or Rule 14. "Although the remedy for misjoinder under Rule 8(b) and prejudicial joinder under Rule 14 is the same—severance and separate trials—the two rules are analytically and procedurally distinct." *United States v. Lloyd*, 10 F.3d 1197, 1214 (6th Cir. 1993).

In *United States v. Hatcher*, 680 F.2d 438 (6th Cir. 1982), the Sixth Circuit articulated the standard for joinder under Rule 8(b) as follows:

> The joinder of multiple defendants is proper under Rule 8(b) only if each of the counts of the indictment arises out of the same act or transaction or series of acts or transactions, even if all counts of the indictment include a common defendant.

*Id.* at 441 (citation modified). "[A] group of acts or transactions constitutes a 'series' if they are logically interrelated." *United States v. Johnson*, 763 F.2d 773, 775–77 (6th Cir. 1985) (explaining Rule 8(b) requires a "a sufficient nexus exists between the defendants and the single or multiple acts or transactions charged as offenses"). If joinder of multiple defendants or multiple offenses does not comply with the requirements of Rule 8, the district court has "no discretion on the question of severance." *Hatcher*, 680 F.2d at 441; *see also* Charles Alan Wright, 1A Federal Practice & Procedure: Criminal § 145, at 89–90 (3d ed. 1999) ("Misjoinder of offenses or defendants . . . raises only a question of law. If there has been misjoinder, the trial court has no discretion to deny the motion."). Whether joinder is permissible under Rule 8(a) is determined by the allegations on the face of the indictment. *United States v. Al-Din*, 631 F. App'x 313, 327 (6th Cir. 2015).

In contrast, the standard for severance under Rule 14 is discretionary.[1] Courts "should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). A risk of prejudice may occur where "many defendants are tried together in a complex criminal case and they have markedly different degrees of culpability," or "when evidence that the jury should not consider

---

[1] This discretionary determination is reviewable on appeal only for an abuse of discretion. *See Opper v. United States*, 348 U.S. 84, 95 (1954).

against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." *Id.* Still, even with a significant risk of prejudice, lesser measures such as limiting instructions will typically suffice. *United States v. Ross*, 703 F.3d 856, 884 (6th Cir. 2012). *See United States v. Williams*, 711 F.2d 748, 751 (6th Cir. 1983) (explaining there must be "a substantial risk that the jury [can]not compartmentalize or distinguish between the evidence against each defendant"). Unlike joinder under Rule 8, which is limited to a review of the indictment, the propriety of ordering separate trials under Rule 14(a) is focused on the evidence likely to be presented at trial. *United States v. Chavis*, 296 F.3d 450, 457–58 (6th Cir. 2002). Thus, at this stage, to demonstrate the necessity of severance under Rule 14(a), a defendant must show "compelling, specific, and actual prejudice [likely to result] from [the] court's refusal to grant the motion to sever." *Williams*, 711 F.2d at 885.

### III. DISCUSSION

#### A. Wright's Motion – Rule 14(a)

Wright does not contest that joinder of Counts 3, 5, and 6 of the Indictment was proper under Rule 8, but claims that "the joinder of multiple counts—particularly those involving inflammatory and emotionally charged photographs and videos—creates precisely the type of unfair prejudice contemplated by *Zafiro* and subsequent Sixth Circuit and Kentucky federal district court decisions." [DE 55 at 235]. As a result, Wright concludes, "[s]everance is therefore warranted" under Rule 14(a). [DE 55 at 235].

The United States responds that "Wright has not identified any case- or evidence-specific basis for departure from the general rule that related counts should be tried jointly," that "severance of counts would not cure the nonspecific prejudice that he asserts" and that this case is similar to *United States v. Abbott*, No. 24-5602, 2025 WL 2237656 (6th Cir. Aug. 6, 2025), in which the

Sixth Circuit upheld a district court's denial of the defendant's motion to sever under Rule 14. [DE 58 at 257, 261].

The Court first considers whether Wright has demonstrated "compelling, specific, and actual prejudice [likely to result] from [the] court's refusal to grant the motion to sever." *Williams*, 711 F.2d at 885. Wright claims that the video and photographic evidence the United States will likely introduce to prove each individual count are "inflammatory and emotionally charged" and "by their very nature, will arouse the passions of the jury and create a substantial likelihood that jurors will convict the Defendant not on the evidence properly related to each count, but on an impermissible basis of emotion or prejudice." [DE 55 at 241]. The evidence at issue includes videos of Wright, and other KSP Troopers in the presence of Wright, employing physical violence against the Alleged Victims which "would shock the average layperson or juror that has no law enforcement training." [*Id.* at 240]. According to Wright, joinder of these offenses risks a "spillover effect" such that "[e]vidence relevant to one count will improperly taint the jury's consideration of others." [*Id.* at 241]. Wright concludes that "[n]o limiting instruction can adequately erase the emotional impact of graphic images once shown to a jury." [*Id.*].

But the Sixth Circuit is clear that "absent a showing of substantial prejudice, spillover of evidence from one [count] to another does not require severance." *United States v. Hang Le-Thy Tran*, 433 F.3d 472, 478 (6th Cir. 2006) (citing *Johnson*, 763 F.2d at 777). Without citation, Wright concludes that the alleged prejudice is incurable. Crucially, Wright does not explain why any prejudice could not be mitigated by "careful limiting instructions to the jury concerning joinder and the need for the jury to consider the evidence separately as it relates to each charged offense," as the Sixth Circuit found the trial court did in *Abbott*, 2025 WL 2237656, at *4. "Juries are presumed to be capable of following instructions regarding the sorting of evidence and the separate

5

consideration of multiple defendants." *United States v. Walls*, 293 F.3d 959, 966 (6th Cir. 2002). Wright therefore fails to demonstrate that the introduction of this evidence would result in "substantial prejudice." *Tran,* 433 F.3d at 478 ("The defendant's conclusory statement that the joinder of the counts 'affected' the jury's ability to render a fair and impartial verdict does not suffice to show substantial prejudice.").

Moreover, Wright fails to respond to the United States' counterarguments that the alleged "spillover" evidence would be admitted regardless of whether severance is granted. [*See* DE 58 at 260–61 ("[I]n a § 242 prosecution for use of excessive force, courts routinely admit evidence that an officer-defendant used excessive force on other occasions for the purpose of establishing his intent to do so upon a particular occasion for which he is charged.").]. As a result, the Court need not determine the admissibility of Wright's prior use-of-force incidents to show intent at this time. It suffices to note that the United States' position is not frivolous. *See, e.g., United States v. Mize*, 498 F. Supp. 3d 978, 984 (S.D. Ohio 2020) (Admitting evidence of three prior uncharged uses of excessive force against defendant jailer charged under § 242, noting that "[f]ederal courts around the United States routinely admit evidence of prior excessive force incidents to prove intent in § 242 cases") (citing *United States v. Brown*, 250 F.3d 580 (7th Cir. 2001). [*See also* DE 58 at 260–61 (collecting cases)].

Accordingly, Wright's Motion to Sever [DE 55] is **DENIED**.

**B. Lewis' and Czartorski's Motions - Rule 8(b)**

Lewis' Motion challenges the joinder of the Defendants in the Indictment under Rule 8(b) and proposes that the case be severed by defendant, into three separate trials.[2] Lewis posits that "[t]he operative question in this case . . . is whether 'each of the counts of the indictment arises out

---

[2] [*See* DE 59 at 267 ("This motion is made solely under Rule 8, but Mr. Lewis reserves the right to file a later Rule 14 motion, which would be unnecessary if this case is severed by defendant.")].

of the same act or transaction or series of acts or transactions." [DE 59 at 268 (citing *Hatcher* 680 F.2d at 441)]. Lewis concludes "[t]hey clearly do not." [*Id.*]. At the November 18, 2025 hearing, Czartorski adopted Lewis's Rule 8(b) arguments and also moved to sever on the basis that Count 5 of the Indictment involved only Wright.

In response, the United States asserts that the "controlling test for whether acts or transactions occurring at different times and against different victims form a joinable 'series' of offenses is whether the distinct acts are 'logically interrelated.'" [DE 64 at 286 (quoting *United States v. Cousins*, 841 F. App'x 885, 893 (6th Cir. 2021))]. And while the United States concedes that the Indictment "does not charge a conspiracy or allege a common scheme or plan, it does allege a series of logically-related criminal acts by Defendant Wright" and that the other Defendants participated in some of them. [*Id.*]

The Court finds the primary case relied on by the United States, *United States v. Beverly*, 369 F.3d 516 (6th Cir. 2004), is readily distinguishable from this case. First, the indictment in *Beverly* specifically alleged a conspiracy. The Sixth Circuit's holding that joinder under Rule 8(b) was proper was premised on the fact that "[a]ll of the defendants committed bank robberies with [two of the defendants] during the course of the conspiracy." *Id.* at 533.[3] Further, "[t]he robberies were a series of offenses that were conducted over a relatively short period of time and performed using a similar pattern of behavior." *Id.* In this case, however, it is undisputed that there is no alleged conspiracy or common scheme. And unlike the "series of bank robberies that occurred . . . between September 1994 and November 1995," *id.* at 523, the series of acts alleged in the Indictment span from "March 5, 2020," to "March 12, 2024." [DE 1].

---

[3] *See also id.* ("Given the common scheme involved in this case, the district court did not abuse its discretion in joining Turns's trial with that of Beverly and Crockett, pursuant to Rule 8(b).")

Nevertheless, the United States argues that *Beverly*'s "rationale makes clear both that a common scheme is merely one way that logical interrelation may exist, and that the involvement of a single defendant in a spree of similar crimes involving different permutations of accomplices weighs powerfully in favor of finding logical interrelation." [DE 64 at 287]. But even if the Court were to accept this interpretation of *Beverly*, it would not make joinder proper here, because the Indictment on its face does not allege "the involvement of a single defendant in a spree of similar crimes." [*Id.*]. Crucially, there are no allegations connecting Count 4 to Wright. Only Czartorski is charged in connection to the April 3, 2020 incident involving Alleged Victim 2, and there is no mention of Wright in the charged facts.[4] *See Cousins*, 841 F. App'x at 893 ("Rule 8 is a pleading rule: We examine only 'the allegations on the face of the indictment.'"). [*Cf.* DE 1 at 4 (alleging that Wright was involved in the arrest of Alleged "Victim 4" six days later on "April 9, 2020")]. The discussion of the hypothetical bank robbers "A, B, C, and D" in the United States' brief is therefore inapposite because in this case there is no Defendant "A" connecting each separate incident. [DE 64 at 287–88]. The United States' theory of joinder does not satisfy Rule 8(b) because each count in the Indictment does not arise out of the same "series of logically-related criminal acts by Defendant Wright." [*Id.* at 286. *See Hatcher*, 680 F.2d at 441].

Nor, for that matter, does the Court find that the March 2020 use-of-force incident involving Lewis, Wright, and Czartorski is sufficiently related to Counts 5 and 6 of the Indictment. On their face, both counts involved only Wright and either took place over four years after the March 2020 incident (Count 5) or a involved a different type of police misconduct (Count 6). [DE 1 at 3–4]. To accept the United States' interpretation of *Beverly* would render the Sixth Circuit's

---

[4] The Court notes that the parties agree, as a factual matter outside the Indictment, that Wright and Czartorski were both present at the incidents alleged in Counts 4 and 6. Nevertheless, the Court may only consider what is alleged in the Indictment.

holding in *Hatcher* a nullity. In *Hatcher*, the two codefendants (referred to as "Defendant A" and "Defendant B" herein) were charged with three counts "related to possession and distribution of heroin" and three counts related to possession and distribution of cocaine over period of two years. *Hatcher*, 680 F.2d at 440. While the court found the heroin charges were sufficiently related because Defendant A was Defendant B's source, joinder was improper under Rule 8(b) because there was "no connection between [Defendant A] and the cocaine-related charges against [Defendant B]." *Id.* at 441. In other words, even though the indictment alleged a series of drug-related crimes by Defendant B, and Defendant A participated in some of those crimes, that did not make the series of acts so "logically interrelated" as to permit joinder of the defendants under Rule 8(b). The Court cannot meaningfully distinguish between the separate alleged police misconduct incidents in this case and the separate narcotic crimes found unrelated in *Hatcher*. As in that case, there is "no connection" between either Lewis or Czartorski and the other police misconduct charges against Wright in Counts 5 and 6 of the Indictment. *Id.*

This conclusion does not end the Court's inquiry, however, because the United States offers an alternate theory of joinder. In its briefing and at the November 18, 2025 hearing, the United States asserts that the "evidentiary overlap" required to prove that Defendants acted "willfully" under 18 U.S.C. § 242 is sufficient to establish that the offenses are "logically interrelated" and thus a part of the same "series of acts or transactions" under Rule 8(b). [DE 64 at 288–89]. The United States is correct that in *Cousins*, the Sixth Circuit found "a set of acts or transactions to form a series if they 'involve substantially overlapping evidence that will permit joint proof at trial.'" 841 F. App'x at 893. Yet, as *Cousins* goes on to explain, this consideration is not without its limits: "On the other hand, Rule 8 is a pleading rule: We examine only 'the allegations on the face of the indictment,' not the proofs at trial, to determine whether Rule 8 permits joinder." *Id.*

The United States' second theory of joinder also fails because it relies on facts outside the Indictment. Specifically, the Unites States argues that

> [t]o meet its burden of proof on that element, the government expects to present substantial evidence on the policies of the law enforcement agency that employed the defendants, how those policies were relayed to the defendants, and the training that defendants received on making use-of-force decisions within the confines of those policies and the law. All defendants were trained at the same academy, on substantially the same curriculum, and in some cases by the same instructors. All of that testimony will be relevant to, and admissible against, all of the defendants.

[*Id.* at 288]. Although each Defendant is alleged to have been "a trooper with the Kentucky State Police," [DE 1], the Court cannot readily infer that "[a]ll defendants were trained at the same academy, on substantially the same curriculum, and in some cases by the same instructors." [*Id.*].

The Sixth Circuit's decision in *Cousins* is instructive. There, the court found a logical relationship between the first six counts of the indictment where Cousin's two co-defendants were "charged with possessing the same drugs and guns" which were "identified by the same serial numbers" throughout the indictment. 841 F. App'x at 894 (finding "proof of each act of possession would necessarily overlap because the acts charged are possession of the same objects—especially the guns, which are identified by the same serial numbers"). However, the court found the single count against Cousins for possession of different guns on the same date did not arise out of the same series of acts or transactions, because the indictment contained "nothing readily connecting the single count charging Mr. Cousins with any of the other six." *Id.* In so holding, the court rejected the prosecution's arguments based on facts outside the indictment:

> Although the government argues that joinder was appropriate because the offenses "grew out of the same search," the three defendants "simultaneously stored guns" at the Dartmouth house, and "[t]he government's witnesses regarding the basis for the search, and the search itself, would be the same in separate trials," there is no basis for any of those conclusions in the charging instrument.

10

*Id.* As in *Cousins*, the Court must reject the similar arguments advanced by the United States in this case.

The Indictment establishes the likelihood of some overlapping proof between the offenses. For instance, because the Indictment alleges that each Defendant was involved in the March 2020 incident, it is fair to consider the United States' argument at the November 18, 2025 hearing that proof of this incident will be admissible under Rule 404(b) to show willfulness or bad faith with respect to Counts 4–6. The Court also accepts that KSP's policies at the time of the March 2020 incident may be relevant to the later-in-time incidents.

Nevertheless, the Court finds the United States has failed to show the possibility of some evidentiary overlap will be so "substantial[]" as to render each act or transaction part of the same "series." *See Cousins*, 841 F. App'x at 893. In determining how much weight to afford this consideration, the Court is guided by the Sixth Circuit's explanation in *United States v. Frost*, also cited in *Cousins*, that "the primary purpose of this kind of joinder is to insure that a given transaction need only be proved once." 125 F.3d 346, 390 (6th Cir. 1997). In both *Frost* and *Cousins*, the Sixth Circuit asked whether proof of particular act or transaction would be necessary across multiple counts. *See id.* (finding joinder was appropriate where severance would "require[] the government to prove repeatedly the same series of transactions."); *Cousins*, 841 F. App'x at 894 (inferring a logical relationship where "proof of each act of possession would necessarily overlap because the acts charged are possession of the same objects"). In this case, severance would only require cumulative proof of one transaction—the March 2020 incident. The separate events alleged in Counts 4, 5, and 6 will need to be proved once regardless of whether Lewis or Czartorski are severed. And although the United States may seek to introduce evidence of the March 2020 incident and KSP policy to prove those counts, this possibility alone does not make

those incidents part the same series of acts or transactions as required by Rule 8(b). Accordingly, joinder of the Defendants was improper and severance is mandatory.

### C. Form of Relief

Having found that Defendants were improperly joined under Rule 8(b), the only question that remains is how to sever the Indictment. If the Court severs by Defendant, any Rule 8(b) concerns necessarily go away because the Defendants are no longer joined. If the Court chooses to sever by count instead, the Court must sever those counts which do not "arise[] out of the same act or transaction or series of acts or transactions" to satisfy Rule 8(b). *Hatcher*, 680 F.2d at 441.

Here, the parties have indicated that they would prefer to sever by count. Although Lewis' Motion asks the Court to sever each Defendant, the United States suggests that the Court "can afford complete and appropriate relief by simply ordering a separate trial of the single count against Defendant Lewis." [DE 64 to 291]. And in his reply, Lewis "agrees that the other two co-defendants have not requested severance under Rule 8(b) and therefore agrees with that approach." [DE 69 at 298–99]. Subsequently, however, Czartorski did move to sever under Rule 8(b) at the hearing on his codefendants' motions. In addition to severing Count 2 against Lewis, counsel for Czartorski requested that Count 5 be severed because Czartorski was no longer employed with KSP at the time of the alleged incident.

The problem with this approach is that it relies on facts outside the Indictment, which the Court cannot consider at this stage. Similarly, severing Counts 2 and 5 would not make joinder of Czartorski and Wright proper under Rule 8(b) because, as discussed above, Counts 1, 3, 4 and 6 are not part of the same series of acts or transactions. Although the parties agree that Czartorski and Wright were present at each underlying incident—a fact which, if alleged, would certainly weigh in favor of a logical interrelation between the three incidents—those allegations are not

before the Court at this time. The Court therefore declines to sever by count and instead will sever each Defendant for separate trial.

Accordingly, Lewis' Motion to Sever [DE 59] is **GRANTED** and the Indictment is severed by Defendant. Czartorski's motion is **GRANTED in part and DENIED in part**.

### IV.   CONCLUSION

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) Wright's Motion to Sever [DE 55] is **DENIED**.

(2) Lewis' Motion to Sever [DE 59] is **GRANTED**.

(3) Czartorski's motion is **GRANTED in part and DENIED in part**.

(4) Counts 1 and 4 of the Indictment shall be tried separately against Czartorski (Case No. 3:25-cr-00030-RGJ-1).

(5) Count 2 of the Indictment shall be tried separately against Lewis (Case No. 3:25-cr-00030-RGJ-2).

(6) Counts 3, 5, and 6 of the Indictment shall be tried separately against Wright (Case No. 3:25-cr-00030-RGJ-3).

(7) Following the next status hearing, currently set for January 28, 2026, the Court will issue a scheduling order setting the dates for the separate trials.

*[Signature]*
Rebecca Grady Jennings, District Judge
United States District Court

Cc: counsel of record

January 6, 2026